Citation Nr: 1438787 
Decision Date: 08/29/14 Archive Date: 09/03/14

DOCKET NO. 12-22 707 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Phoenix, Arizona


THE ISSUE

Entitlement to service connection for Parkinson's disease. 


REPRESENTATION

Appellant represented by: The American Legion


ATTORNEY FOR THE BOARD

Jennifer Hwa, Counsel


INTRODUCTION

The Veteran served on active duty from November 1942 to February 1946. 

This case comes before the Board of Veterans' Appeals (Board) on appeal from a September 2010 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Phoenix, Arizona. The September 2010 rating decision, in pertinent part, denied service connection for Parkinson's disease. In September 2010, the Veteran filed a Notice of Disagreement. The RO furnished the Veteran a Statement of the Case in August 2012, and the Veteran filed a Substantive Appeal (VA Form 9) later in August 2012.

The Veteran originally also appealed the issues of entitlement to service connection for bilateral hearing loss and tinnitus. A November 2011 rating decision granted service connection for bilateral hearing loss and tinnitus, both effective April 10, 2010. That represents total grants of the benefits sought on appeal for the issues of entitlement to service connection for bilateral hearing loss and tinnitus, and therefore, those issues are no longer before the Board. 

In February 2014, the Board remanded this claim for additional development. 

This appeal was processed using the Veterans Benefits Management System (VBMS) paperless claims processing system. There is also a paperless, electronic record in the Virtual VA system. Accordingly, any future consideration of this appellant's case should take into consideration the existence of these electronic records. 

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). 38 U.S.C.A. § 7107(a)(2) (West 2002).


FINDING OF FACT

Parkinson's disease was not shown in service or for many years thereafter, and the most probative evidence fails to link the Veteran's current Parkinson's disease to service or to a service-connected disability. 


CONCLUSION OF LAW

The requirements for establishing service connection for Parkinson's disease have not been met. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113, 5107 (West 2002 & Supp. 2013); 38 C.F.R. §§ 3.303, 3.307, 3.309, 3.310 (2013). 


REASONS AND BASES FOR FINDING AND CONCLUSION

Veterans Claims Assistance Act of 2000

The Veterans Claims Assistance Act of 2000 (VCAA), Pub. L. No. 106-475, 114 Stat. 2096 (Nov. 9, 2000) (codified at 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, and 5126 (West 2002 & Supp. 2013)) redefined VA's duty to assist a claimant in the development of a claim. VA regulations for the implementation of the VCAA were codified as amended at 38 C.F.R. §§ 3.102, 3.156(a), 3.159, and 3.326(a) (2013).

The notice requirements of the VCAA require VA to notify the claimant of any evidence that is necessary to substantiate the claim, as well as the evidence VA will attempt to obtain and which evidence he is responsible for providing. 38 C.F.R. § 3.159(b) (2013). The requirements apply to all five elements of a service connection claim: veteran status, existence of a disability, a connection between a veteran's service and the disability, degree of disability, and effective date of the disability. Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). VCAA notice must be provided to a claimant before the initial unfavorable decision on a claim for VA benefits by the agency of original jurisdiction (in this case, the RO). Id.; see also Pelegrini v. Principi, 18 Vet. App. 112 (2004). However, the VCAA notice requirements may be satisfied if any errors in the timing or content of such notice are not prejudicial to the claimant. See Pelegrini, 18 Vet. App. at 121.

In this case, in an April 2010 letter issued prior to the decision on appeal, the Veteran was provided notice regarding what information and evidence is needed to substantiate his claim for service connection (to include on a secondary basis), as well as what information and evidence must be submitted by the Veteran and what information and evidence will be obtained by VA. The April 2010 letter also advised the Veteran of how disability evaluations and effective dates are assigned, and the type of evidence which impacts those determinations. 

The record also reflects that VA has made reasonable efforts to obtain relevant records adequately identified by the Veteran. Specifically, the information and evidence that have been associated with the claims file include the Veteran's service treatment records, service personnel records, VA and private treatment records, VA examination reports, and the Veteran's statements. The Board finds that the January 2013 VA examination conducted in connection with the claim, taken together with the April 2014 VA addendum opinion, is adequate because the examiners considered the relevant facts regarding the Veteran's medical history and addressed the relevant criteria regarding whether the Veteran's Parkinson's disease was due to his period of service or whether it was due to or aggravated by his service-connected disabilities. 

Additionally, the prior remand instructions were substantially complied with. Instructions pertinent to the claim being decided included obtaining a VA addendum opinion regarding whether the Veteran's Parkinson's disease was aggravated by his service-connected posttraumatic stress disorder (PTSD), bilateral hearing loss, and tinnitus. In response, the RO/AMC obtained an April 2014 VA addendum opinion addressing the issue at hand. Accordingly, the Board finds that there has been substantial compliance with the prior remand instructions and no further action is necessary. See D'Aries v. Peake, 22 Vet. App. 97 (2008) (holding that only substantial, and not strict, compliance with the terms of a Board remand is required pursuant to Stegall v. West, 11 Vet. App. 268 (1998)). 

As discussed above, the VCAA provisions have been considered and complied with. The Veteran was notified and aware of the evidence needed to substantiate his claim, the avenues through which he might obtain such evidence, and the allocation of responsibilities between himself and VA in obtaining such evidence. The Veteran was an active participant in the claims process by providing evidence and argument. Thus, he was provided with a meaningful opportunity to participate in the claims process and has done so. Any error in the sequence of events or content of the notices is not shown to have any effect on the case or to cause injury to the Veteran. Therefore, any such error is harmless and does not prohibit consideration of this matter on the merits. See Dingess, supra; see also ATD Corp. v. Lydall, Inc., 159 F.3d 534, 549 (Fed. Cir. 1998).

Analysis 

Service connection may be established for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C.A. §§ 1110, 1131 (West 2002); 38 C.F.R. § 3.303 (2013). Evidence of continuity of symptomatology from the time of service until the present is required where the chronicity of a condition manifested during service either has not been established or might reasonably be questioned. 38 C.F.R. § 3.303(b). Regulations also provide that service connection may be granted for any disease diagnosed after discharge, when all of the evidence, including that pertinent to service, establishes that the disability was incurred in service. 38 C.F.R. § 3.303(d).

Moreover, where a veteran served continuously for ninety (90) days or more during a period of war, or during peacetime service after December 31, 1946, and paralysis agitans becomes manifest to a degree of 10 percent within one year from the date of termination of such service, such disease shall be presumed to have been incurred or aggravated in service, even though there is no evidence of such disease during the period of service. This presumption is rebuttable by affirmative evidence to the contrary. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113 (West 2002); 38 C.F.R. §§ 3.307, 3.309 (2013). 

In order to prevail on the issue of service connection, there must be medical evidence of a current disability; medical evidence, or in certain circumstances, lay evidence of in-service occurrence or aggravation of a disease or injury; and competent evidence of a nexus between an in-service injury or disease and the current disability. See Hickson v. West, 12 Vet. App. 247, 253 (1999); see also Barr v. Nicholson, 21 Vet. App. 303 (2007); Pond v. West, 12 Vet App. 341, 346 (1999).

Service connection may also be established for disability which is proximately due to or the result of a service-connected disability. 38 C.F.R. § 3.310(a) (2013). Further, a disability which is aggravated by a service-connected disability may be service-connected to the degree that the aggravation is shown. 38 C.F.R. § 3.310 (2013); Allen v. Brown, 7 Vet. App. 439 (1995). 

The Board has reviewed all of the evidence in the Veteran's claims file. Although the Board has an obligation to provide adequate reasons and bases supporting this decision, there is no requirement that the evidence submitted by the Veteran or obtained on his behalf be discussed in detail. Rather, the Board's analysis below will focus specifically on what evidence is needed to substantiate the claim and what the evidence in the claims file shows, or fails to show, with respect to the claim. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) and Timberlake v. Gober, 14 Vet. App. 122, 128-30 (2000).

The Veteran contends that his Parkinson's disease is due to the stresses of his World War II Pacific theater battle experiences during his period of service in the Navy. Alternatively, he contends that his Parkinson's disease is secondary to his service-connected PTSD, bilateral hearing loss, or tinnitus. 

Service personnel records confirm that the Veteran served in several campaigns and operations during World War II, and a citation award from the Admiral of the U.S. Navy indicates that the Veteran served in operations against the enemy. However, service treatment records are negative for any complaints, diagnoses, or treatment for Parkinson's disease, or any other neurological disorder. On separation examination in February 1946, the Veteran's nervous system was found to be normal. 

Post-service VA and private treatment records dated from March 2010 to August 2013 show that the Veteran received intermittent treatment for Parkinson's disease. 

On VA examination in January 2013, the examiner noted the Veteran's 3.5 years of service in the Navy and that he was involved in 9 major battles at sea during World War II. She also noted that the Veteran had been diagnosed with Parkinson's disease in 2010 by Dr. J.R, a private physician. The Veteran denied any direct head trauma, history of traumatic brain injury, or exposure to toxins that could affect the central nervous system that he was aware of during active duty. He reported developing tremors in the mouth and hands about 4 years ago at the age of 86. He stated that he believed that the cause of his symptoms was all the recoil from the guns and noise during battle in World War II. The examiner noted that the Veteran had been seen by a VA neurologist as well and that both the VA neurologist and Dr. J.R. purported that he had idiopathic Parkinson's disease. The Veteran complained of experiencing tremor, sialorrhea, tongue quivers, difficulty swallowing and speaking, and a little trouble with walking and balance. After review of the Veteran's claims file and examination of the Veteran, the examiner opined that it was not likely that military-related events were causal in the Veteran's subsequent development of Parkinson's disease at age 86. She explained that at least 50 years had passed between military service and the Veteran's current age/symptom occurrence, and concluded that the Parkinson's disease was more likely to be idiopathic or age-related/ischemic. Regarding whether the Veteran's Parkinson's disease was secondary to his service-connected PTSD, hearing loss, and tinnitus, the examiner explained that PTSD, hearing loss, and tinnitus did not cause Parkinson's disease. 

In an April 2014 VA addendum opinion, the VA examiner reviewed the Veteran's entire claims file. He opined that it was not at least as likely as not that the Veteran's Parkinson's disease had been permanently aggravated beyond its natural progress by his service-connected PTSD, hearing loss, or tinnitus. He explained that the pathologic abnormalities in Parkinson's disease had not been shown by any peer-reviewed study, of which he was aware, to be advanced by PTSD, hearing loss, or tinnitus. He stated that it was reasonable and possible that PTSD, hearing loss, and tinnitus might temporarily exacerbate at least some of the Parkinson's disease symptoms simply by the stress induced by those conditions, but found that this was quite different from those conditions permanently affecting the course of the disease. 

With regard to service connection for Parkinson's disease on a direct basis, the Board reiterates that the Veteran's service treatment records are negative for any complaints, diagnosis, or treatment of Parkinson's disease. In addition, Parkinson's disease was not shown to a compensable degree within one year following his discharge from service. Indeed, in his variously submitted lay statements and at his January 2013 VA examination, the Veteran did not assert that he had Parkinson's disease during his period of service or within the first year after discharge from service. He instead reported that he was first diagnosed with Parkinson's disease in 2010 (about 64 years after his discharge from service). 

The first objective post-service evidence of Parkinson's disease is in March 2010, which is approximately 64 years after the Veteran's period of active service. As Parkinson's disease was not shown for many years after the Veteran's period of service, this weighs against a claim that it was directly related to service. See Maxson v. Gober, 230 F.3d 1330, 1333 (Fed. Cir. 2000) (lengthy period of absence of medical complaints for condition can be considered as a factor in resolving claim). Moreover, at no time did any of the Veteran's treating providers find that his Parkinson's disease was related to his period of active service. Instead, the January 2013 VA examiner determined that the Veteran's Parkinson's disease was not at least as likely as not due to his period of service. She explained that at least 50 years had passed between military service and the Veteran's current age/symptom occurrence, and concluded that the Parkinson's disease was more likely to be idiopathic or age-related/ischemic. 

The Board notes that the Veteran has been diagnosed with Parkinson's disease, which is a condition explicitly recognized as chronic under 38 C.F.R. § 3.309(a) (2013) (paralysis agitans). Service connection based on a continuity of symptomatology can be warranted under 38 C.F.R. § 3.303(b) (2013) for chronic diseases. See Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). However, in this case, the Veteran has not asserted a continuity of symptomatology after discharge. Indeed, the Veteran has consistently reported that he was diagnosed with Parkinson's disease in 2010. Moreover, the objective evidence of record does not show that the Veteran has continuously had Parkinson's disease since discharge from service. Therefore, the Board finds that service connection for Parkinson's disease based on a theory of continuity of symptomatology is not warranted. 

With regard to service connection for Parkinson's disease on a secondary basis, the Board notes that at no time did any of the Veteran's treating providers find that his Parkinson's disease was due to or aggravated by his PTSD, bilateral hearing loss, or tinnitus. However, the January 2013 and April 2014 VA examiners reviewed the claims file, interviewed and examined the Veteran, and provided adequate reasoning and bases for the opinions that it was less likely than not that the Veteran's Parkinson's disease was caused or aggravated by his PTSD, bilateral hearing loss, or tinnitus. Specifically, the January 2013 examiner explained that PTSD, hearing loss, and tinnitus did not cause Parkinson's disease. The April 2014 examiner explained that the pathologic abnormalities in Parkinson's disease had not been shown by any peer-reviewed study to be advanced by PTSD, hearing loss, or tinnitus. He stated that it was reasonable and possible that PTSD, hearing loss, and tinnitus might temporarily exacerbate at least some of the Parkinson's disease symptoms simply by the stress induced by those conditions, but found that these conditions did not permanently aggravate the course of Parkinson's disease. For these reasons, the January 2013 opinion by the January 2013 VA examiner and the April 2014 addendum opinion by the April 2014 VA examiner are afforded great probative value. 

Although lay persons are competent to provide opinions on some medical issues, see Kahana v. Shinseki, 24 Vet. App. 428, 435 (2011), as to the specific issue in this case, Parkinson's disease falls outside the realm of common knowledge of a lay person. In this regard, while the Veteran can competently report the onset and symptoms of tremors, any actual diagnosis of Parkinson's disease requires objective testing to diagnose, and can have many causes. See Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007) (noting general competence to testify as to symptoms but not to provide medical diagnosis). 

Moreover, whether symptoms the Veteran experienced in service or following service are in any way related to any current Parkinson's disease requires medical expertise to determine. See Clyburn v. West, 12 Vet. App. 296, 301 (1999) ("Although the veteran is competent to testify to the pain he has experienced since his tour in the Persian Gulf, he is not competent to testify to the fact that what he experienced in service and since service is the same condition he is currently diagnosed with."). To the extent that the Veteran believes that he has current Parkinson's disease that is due to service or a service-connected disability, as a lay person, he is not shown to possess any specialized training in the medical field. The Veteran's opinion as to the etiology of his current Parkinson's disease is not competent medical evidence, as such question requires medical expertise to determine. Id. In any event, the Board concludes that the medical evidence, which reveals that Parkinson's disease is not due to service or a service-connected disability, is of greater probative value than the lay contentions of the Veteran. 

In sum, the Board finds that the probative and persuasive evidence does not show that the Veteran's Parkinson's disease is related to his period of service, or that his current Parkinson's disease is due to or aggravated by his service-connected PTSD, bilateral hearing loss, or tinnitus. Accordingly, service connection for Parkinson's disease is not warranted on any basis. In reaching the conclusions above, the Board has considered the applicability of the benefit of the doubt doctrine. However, as the preponderance of the evidence is against the Veteran's claim, that doctrine is not applicable in the instant appeal. See 38 U.S.C.A. § 5107(b); Ortiz v. Principi, 274 F.3d 1361, 1364 (Fed. Cir. 2001); Gilbert v. Derwinski, 1 Vet. App. 49, 55-57 (1990).


ORDER

Entitlement to service connection for Parkinson's disease is denied. 



____________________________________________
DEBORAH W. SINGLETON
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs